UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSEPH CONNAHEY,

    Petitioner,

v.                                      Case No. 8:05-cv-488-T-23MAP

SECRETARY, Department of Corrections,

    Respondent.
_____/

## **O R D E R**

Connahey petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and challenges his conviction for burglary, for which conviction Connahey serves twenty years. Numerous exhibits ("Respondent's Exhibit __") support the response (Doc. 5). The respondent asserts no challenge to the petition's timeliness. The petition lacks merit.

### **FACTS**[1]

> On July 19, 1997, a person entered the home of Ida Cuozzo, without permission, . . . Ms. Cuozzo woke up, at which time the subject . . . allegedly grabbed her ankle and told her to be quiet. Ms. Cuozzo screamed, and the subject [fled]. Ms. Cuozzo shut the doors . . . and locked them. Ms. Cuozzo's son-in-law called 911 and reported the incident. Ms. Cuozzo stated that she could not tell what the subject was wearing, but stated that he was a white male, and appeared to have on a long sleeve shirt and pants.
>
> Officer S. Golczewski was dispatched to the area approximately sixteen (16) minutes after the initial offense. As he was sitting in his unmarked patrol car, he . . . saw a subject walking west on 82nd Avenue. . . .

---

[1] Connahey admits these facts in his motion to suppress (Respondent's Exhibit 20, vol.I at 26-27).

> The Officer then went to the intersection of 82nd Avenue and 55th Street to look for the subject. The officer stated he . . . observed a white male riding a bicycle north on 55th Street. The person on the bike appeared to be wearing a mauve colored back pack. The officer drove up and indicated he wanted to talk to this person. The subject on the bike did not respond, and apparently was ignoring the officer. The officer then turned on his emergency lights, stopped the car, and asked the subject if he could talk to him again. At this point, the subject rode his bicycle to the east side of the road and continued to ride north on 55th Street.
>
> The Officer exited his vehicle and walked to the sidewalk and apparently lost sight of the person on the bike behind some trees. When the officer got [to] the sidewalk, . . . the subject got off the bicycle. . . . The officer alleges that the person who got off the bicycle then took the mauve back pack off his back and threw it in the yard . . . as he ran from the officer. The Officer told the subject to stop, but the subject continued to run. The Officer called dispatch, gave the subjects direction of travel, and then told him to stop again. The suspect stopped running when he met a fence, at which time the officer took him down and restrained him. The . . . defendant made several spontaneous statements, "I didn't do anything," "I'm on my way back from Carly's."
>
> The Officer then went back, located the mauve bag, which turned out to be a purse. The officer then called to Officer Cook, and asked Officer Cook to ask the victim if she [was] missing a mauve colored purse. He also asked for the victim's name, and found identification inside the purse which corresponded with the victim's name.
>
> Officer Finley then arrived with a K-9 who was allegedly tracking from the location of the burglary to wear [sic] the defendant was restrained by Officer Golczewski.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding. Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." Bell v. Cone, 535 U.S. 685, 694 (2002); Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide.").

The state appellate court affirmed (Respondent's Exhibit 4) Connahey's conviction and sentence on direct appeal in a per curiam decision without a written opinion, and likewise affirmed (Respondent's Exhibit 18) the denial of his subsequent Rule 3.850 motion for post-conviction relief. The state appellate court's per curiam affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v. Crosby, 538 U.S. 906 (2003).

Connahey bears the burden of overcoming a state court factual determination by clear and convincing evidence. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies only to a finding of fact, not a mixed determination of law and fact. Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001). Consequently, this court must defer to the finding of fact in the state court's rejection of Connahey's post-conviction claims (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibits 10 and 14).

## **INEFFECTIVE ASSISTANCE OF COUNSEL**

Connahey claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)). Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of

- 4 -

counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to Strickland, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice. Strickland v. Washington, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Sims v. Singletary, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland v. Washington, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland v. Washington, 466 U.S. at 690. Strickland requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland v. Washington, 466 U.S. at 690.

Connahey must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting

- 5 -

aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland v. Washington, 466 U.S. at 691-92. To meet this burden, Connahey must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland v. Washington, 466 U.S. at 690-91. Connahey cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992). Accord Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' ") (en banc) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)). See also Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Connahey must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The state court conducted an evidentiary hearing and denied the claims of ineffective assistance of counsel as follows:

> Overall, the Defendant raises the claim of ineffective assistance of counsel. To successfully argue a claim of ineffective assistance of counsel, the Defendant must prove that counsel's performance was deficient and that the deficiency caused the Defendant to suffer prejudice. See Strickland v. Washington, 466 U.S. 668 (1984). To satisfy the prejudice test the Defendant must show that a reasonable probability exists that the outcome would have been different absent the ineffective assistance. See id.; See Haliburton v. Singletary, 691 So.2d 466 (Fla. 1997). The evaluation of an attorney's performance at the trial level requires a consideration of all the circumstances from the attorney's perspective at the time of trial. Downs v. State, 453 So. 2d 1102, 1106-07 (Fla. 1984). The legal standard, for such an evaluation is "reasonably effective counsel, not perfect of error-free counsel." Teffeteller v. Dugger, 734 So.2d 1019,1022 n.14 (Fla. 1999).

Respondent's Exhibit 14 at 144. Because the state court correctly recognized that Strickland governs each claim of ineffective assistance of counsel, Connahey cannot meet the "contrary to" test in Section 2254(d)(1). Connahey instead must show that the state court unreasonably applied Strickland or unreasonably determined the facts.

Ground One:

Connahey alleges that trial counsel rendered ineffective assistance by failing to investigate an alibi defense even though he provided counsel with the name and address of the bar and bartender he was allegedly patronizing. The state court rejected this claim

after considering the testimony of Connahey and his trial counsel in an evidentiary hearing.

> The Defendant alleges that counsel's performance was deficient by failing to investigate an alibi witness. The Defendant specifically alleges that he asked trial counsel to investigate a bartender that could support that he was at a bar at the time of the incident.
>
> Trial counsel, William Bennett, Esquire, testified that the Defendant did initially tell him that he was at a bar on the night of the incident, but that the Defendant did not indicate that he wanted him to investigate the bartender. Trial counsel testified that the Defendant only requested that his sister and mother be investigated as alibi witnesses. Trial Counsel further testified that he received a letter from the Defendant that stated that he was at the scene of the crime the night the incident occurred.
>
> In matters such as these, it is the Court's prerogative to assess witness credibility and to determine the facts based on that assessment. Based on a credibility determination, then, the Court finds that the Defendant has failed to show ineffective assistance of counsel under Strickland. The Defendant failed to show that he informed trial counsel that he wanted him to investigate a bartender as an alibi witness.

Respondent's Exhibit 14 at 144-45 (references to record omitted). The state court resolved this conflict between the testimony of Connahey and his trial counsel by rejecting Connahey's credibility. This court is required to defer to a state court's credibility determination. "We must accept the state court's credibility determination and thus credit [the attorney's] testimony over [the petitioner's]. Coulter v. Herring, 60 F.3d 1499, 1503 (11th Cir. 1995) (applying the statutory presumption of correctness under § 2254(d) to the state court's credibility determination), cert. denied, 516 U.S. 1122 (1996)." Baldwin v. Johnson, 152 F.3d 1304, 1316 (11th Cir. 1998), cert. denied, 526 U.S. 1047 (1999). The state court determined that Connahey's allegation was not credible. Consequently, Connahey cannot show that the state court's application of Strickland was unreasonable.

Ground Two:

Connahey alleges that trial counsel rendered ineffective assistance by failing to investigate whether the police falsified records and "planted" evidence. The state post-conviction court summarily rejected this claim as follows:

> Defendant contends counsel failed to investigate Defendant's allegations that the police falsified evidence records and failed to object to the police's failure to document the chain of custody. Defendant states he never had the items in his possession. Without determining the veracity of these allegations, the Court finds Defendant has not proven that he suffered prejudice. As such, the second prong of the Strickland test has not been satisfied. This claim is denied.

Respondent's Exhibit 10 at 35. A police officer saw Connahey discard the purse while fleeing and the purse contained the victim's identification. A K-9 unit tracked from the burglary to Connahey. Contrary to these facts, Connahey claims that he never possessed the purse and he complains that the state failed to prove a proper chain of custody. The state court rejected Connahey's claim based on a lack of prejudice, presumably because Connahey failed to identify a break in the chain of custody, an omission also present in this federal proceeding. Consequently, Connahey cannot show that the state court's application of Strickland was unreasonable.

Ground Three:

Connahey alleges that trial counsel rendered ineffective assistance by coercing a nolo contendere plea on the promise that Connahey would be "one hundred percent successful" on appeal regarding the trial court's denial of the motion to suppress. The state post-conviction court rejected this claim after considering the testimony of Connahey and his trial counsel in an evidentiary hearing.

> The Defendant also alleged that trial counsel's performance was ineffective because counsel promised the Defendant that he would be one hundred (100) percent successful on appeal and that the State would have to then drop the charges. Trial counsel testified that he never told the Defendant that he would be successful on appeal and that in his entire career as an attorney, he has never directed a client to take a plea based on a motion to suppress.
>
> Again the Court has the prerogative to assess witness credibility. Based on a credibility determination, then, the Court finds that the Defendant has failed to show ineffective assistance of counsel under Strickland. Defendant failed to show that trial counsel informed him that he would be one hundred (100) percent successful on his appeal.

Respondent's Exhibit 14 at 145. As stated above regarding ground one, this court must defer to the state court's credibility determination. Consequently, Connahey cannot show that the state court's application of Strickland was unreasonable.

Grounds Four and Five:

Connahey challenges the state court's sentencing him as both a habitual felony offender (twenty years) and a prison releasee reoffender (fifteen year minimum mandatory). Connahey also alleges that trial counsel rendered ineffective assistance by failing to challenge application of each of the sentencing acts. The state post-conviction court rejected these interrelated claims as follows:

> Defendant claims counsel failed to object to an enhanced sentence since Defendant's prior offenses were not qualifying offenses. Defendant contends the offenses occurred outside the statutory time frame for qualifying offenses and he was sentenced on the same date for all the offenses, so the prior offenses could only be considered one offense.
>
> The record shows Defendant was sentenced as a habitual felony offender and a fifteen-year minimum mandatory sentence was imposed as a prison releasee reoffender. To receive a habitual felony offender sentence, an offender must have at least two felony convictions, with the current felony offense committed within five years of the date of the last felony conviction or within five years of the offender's release from prison or supervision. See § 775.084(1)(a), Fla. Stat. (1999). To qualify for a prison releasee

- 10 -

> reoffender sentence, an offender must commit an enumerated offense
> (which includes burglary) within three years of being released from a
> correctional facility or while on escape status from a correctional facility.
> See § 775.082(9)(a), Fla. Stat. (1999).
>
> Here, the record demonstrates that Defendant did have at least two felony
> convictions. The current offense occurred on July 19, 1997. The record
> evidences that Defendant was released from prison on June 30, 1995.
> Thus, the record proves that Defendant did qualify for a habitual felony
> offender sentence and a prison releasee reoffender sentence. Further, the
> record reveals that Defendant was not sentenced on the same date for his
> prior offenses and, as such, this allegation is unfounded. Based on the
> foregoing reasons, the Court finds Defendant has not proven that counsel's
> performance was deficient and this claim is denied.

Respondent's Exhibit 10 at 37-38 (references to record omitted). In a letter (Doc. 7),

construed as a reply, Connahey argues that the prison releasee reoffender sentence is

improper because the 1983 youthful offender sentence, which included fifteen years

probation, was an illegal sentence because the sentence should have included only two

years probation.[2] Connahey cannot challenge an expired sentence.

> [W]e hold that once a state conviction is no longer open to direct or
> collateral attack in its own right because the defendant failed to pursue
> those remedies while they were available (or because the defendant did so
> unsuccessfully), the conviction may be regarded as conclusively valid. If
> that conviction is later used to enhance a criminal sentence, the defendant
> generally may not challenge the enhanced sentence through a petition
> under § 2254 on the ground that the prior conviction was unconstitutionally
> obtained.

Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 403-04 (2001) (citation

omitted). Connahey cannot show that counsel's performance was both deficient and

---

[2] Connahey argues that if the state court had imposed the proper two-year probation, he would have completed the probation. Instead, because the state court imposed probation for fifteen years, the subsequent revocation of probation would not have occurred, which revocation resulted in additional imprisonment and probation. Release from the second term of imprisonment was the basis for imposing the prison releasee reoffender sentence challenged in this federal proceeding.

- 11 -

prejudicial because he cannot challenge any of his expired sentences.[3]  Connahey fails to show that the state court's application of Strickland was unreasonable.

Accordingly, Connahey's petition for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk shall enter a judgment against Connahey and close this case.

ORDERED in Tampa, Florida, on March 31, 2009.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[3]  Connahey has prior convictions from 1983, 1988, and 1993.